UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**KERMIT PARKER (#119466)**                                        CIVIL ACTION

**VERSUS**

**LOUISIANA DEPARTMENT OF PUBLIC SAFETY**                NO. 05-1194-C-M2
**AND CORRECTIONS, ET AL.**

**NOTICE**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have ten (10) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 10 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Signed in chambers in Baton Rouge, Louisiana, April 9, 2008.

                             **MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KERMIT PARKER (#129332)                                    CIVIL ACTION

VERSUS

LOUISIANA DEPARTMENT OF PUBLIC SAFETY                      NO. 05-1194-C-M2
AND CORRECTIONS, ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion to Dismiss, rec.doc.no. 36, and the parties' cross-motions for summary judgment, rec.doc.nos. 38 and 45.

The pro se plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Secretary Richard Stalder, Warden N. Burl Cain, Warden's Designee Dora Rabalais, Internal Affairs Supervisor Jeff Pelitz, Classification Officer John Joseph, Classification Officer Woodrow Wilson, Classification Officer H. Duncan, Classification Officer Beth Tyler, Classification Officer Orvin Marcantil, Classification Officer D. Cavolir, Classification Officer R. Reed, Classification Officer Ken Ray, Classification Officer Gary Young, Deputy Warden Darryl Vannoy, Ass't Warden Shirley Coody, Lt.Col. Charles Honeycutt, Social Worker Gary Midkiff, Capt. Robert Jones, Sgt. Bobby Jones, Investigator Bobby Achord, Sgt. Sims, Sgt. Willie Washington, Sgt. Howard, Medical Director Tarver, and Investigator Eli Wilson, alleging that the defendants have violated his constitutional rights in numerous respects, including through excessive force, deliberate indifference to his serious medical needs, denial of due process, denial of equal protection, and participation in a retaliatory conspiracy.[1]

---

[1] Attempts by the United States Marshal's Office to serve defendants Jeff Pelitz, R. Reed, Sgt. Sims, Orvin Marcatil, Dr. Tarver, Sgt. Howard and Ken Ray have proven unsuccessful because the Louisiana Department of Public Safety and Corrections has refused to accept service on behalf of these individuals. Accordingly, these defendants have not appeared in this proceeding and have not participated in the instant motions. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff to serve a defendant within 120

In his Complaint, the plaintiff alleges that on September 20, 2002, he addressed a letter to prison officials concerning administrative grievances which he had allegedly filed but to which he had received no response. The plaintiff asserts that, because of his complaint, his cell was searched by an unidentified security officer, and his original September 20, 2002 "notation", supporting "evidence", correspondence and "research and draftings" were confiscated. Although the plaintiff filed an administrative grievance relative to this incident, all of the claims therein were denied, and he never received a response from Warden Cain.

Several months later, on December 2, 2002, the plaintiff was charged with an allegedly false disciplinary report, charging him with attempting to smuggle a cell-phone into the prison. According to the report, prison investigators had discovered the plaintiff's name in use on the internet and, pursuant to prison policy, had begun to monitor his mail, ultimately finding a letter he had written to a woman offering money if she brought him a cell-phone in violation of prison rules. At a subsequent disciplinary board hearing conducted on December 3, 2002, at which the plaintiff was allegedly denied due process, he was found guilty, was placed on "scam restrictions", and was sentenced to 30 days of cell confinement.[2] Although the plaintiff appealed this sentence, and although prison rules provide that a decision on a disciplinary appeal shall be made within 120 days, he allegedly did not receive a response to his appeal until October, 2004, long after this deadline had passed. In addition, although he allegedly filed several additional administrative

---

days of commencement of an action is cause for dismissal of that defendant from the proceedings. It is appropriate, therefore, that the plaintiff's claims against defendants Pelitz, Reed, Sims, Marcatil, Tarver, Howard and Ray be dismissed, without prejudice.

[2] The Court notes that, whereas the initial disciplinary sentence subjected the plaintiff to the loss of 180 days of accrued good-time credits, on appeal of the referenced disciplinary charge, the plaintiff's disciplinary sentence was modified to reflect that he would not lose any good time.

grievances, including an "emergency sensitive issues ARP" relative to having been placed on scam restrictions, he asserts that he received no response to same. Moreover, he allegedly addressed correspondence to defendants Cain, Rabalais and Joseph about his ARPs not being responded to, but none of the defendants responded to his inquiries.

As a result of the referenced scam restrictions, imposed by defendant Vannoy, the plaintiff was limited in his ability to correspond with persons outside of the prison, being permitted only to correspond with five (5) persons listed on his approved visitor's list. In addition, his mail was routinely intercepted and read by prison officials. In protest of these limitations, the plaintiff went on a 9-day hunger strike. When defendant Cain learned of this hunger strike, defendant Cain contacted the plaintiff and threatened the plaintiff with additional hardship unless the plaintiff "stopped trying to cause trouble for the institution."

The plaintiff also complains of an incident allegedly occurring on December 17, 2002, at which time defendants Sims and Howard used a hose to spray water into the plaintiff's and several other inmates' cells, causing damage to the plaintiff's papers and property. When the plaintiff requested to see a superior officer, defendant Jones came down the cell tier but offered no assistance. When the plaintiff and several other inmates threatened another hunger strike in response to this conduct, a "shake 'em up squad", led by defendant Washington, came to the cell tier to attempt to intimidate the witnesses. When the plaintiff refused to be intimidated, defendant Jones ordered the plaintiff to pack his belongings for escort to administrative segregation. As the plaintiff was being escorted, defendant Howard allegedly punched the plaintiff in the forehead, and defendant Washington kicked the plaintiff in the rear and punched the plaintiff in the back. Upon arrival at administrative segregation, the plaintiff allegedly found his cell to be

without light and without a working faucet or toilet. The plaintiff complains that he remained in these conditions until February, 2003. Further, although the plaintiff requested medical attention relative to complaints of pain from the above-referenced use of force and relative to his eyes being strained due to the absence of light in his cell, his complaints were not attended to. He acknowledges that he "saw practicing medical physicians", but he asserts that they "failed to treat [his] ailments."

Finally, in August, 2004, the plaintiff began to notice that there was a gap or interval in the manner in which his administrative grievances were being addressed by prison officials, and it appeared to him that some of his earlier-filed ARPs had not been addressed. When he inquired as to this gap, defendant Rabalais responded that prison officials were not in possession of any ARPs filed by the plaintiff earlier than 2004. Accordingly, the plaintiff filed a new ARP, complaining that prison officials had systematically "ignored, bypassed and tossed" his grievances, all in an effort to obstruct and hinder his ability to seek redress of grievances in violation of his First Amendment rights.

DISCUSSION

Turning to a review of the plaintiff's claims, it appears initially that he has named the defendants herein in both their individual and their official capacities. Notwithstanding, § 1983 does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. Neither a State, nor its officials acting in their official capacities, are "persons" under § 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Thus, it is clear that the plaintiff fails to state a claim under § 1983 against the defendants in their official capacities.

Turning next to the defendants' motion for partial summary judgment, the defendants assert, relying upon certified copies of the plaintiff's administrative remedy proceedings identified by him in his Complaint, that the plaintiff has failed to exhaust administrative remedies relative to most of his claims. Pursuant to 42 U.S.C. § 1997e, the plaintiff was required to exhaust administrative remedies available to him prior to the institution of suit in federal court relative to prison conditions. This provision is mandatory and allows for no exceptions. Further, summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Federal Rules of Civil Procedure.

In his Complaint, the plaintiff identified only a single disciplinary appeal, which he took from the above-referenced disciplinary charge of December 2, 2002, as the administrative proceeding that he commenced relative to the claims asserted in this lawsuit. In that appeal, the plaintiff complained only of the disciplinary proceedings, and there were no claims asserted therein relative to prison officials not responding to his ARPs, to his being sprayed with water by defendants Sims and Howard, to his being subjected to verbal abuse and harassment by any defendant, to his being subjected to excessive force by defendants Howard and Washington, to his being placed in a cell without running water or working lights, or to his being denied medical attention. It appears, therefore, that the plaintiff has failed to exhaust administrative remedies relative to these claims.

Notwithstanding the foregoing, the plaintiff asserts that he filed a second ARP specifically addressing the failure of prison officials to

respond to his administrative grievances and that he has filed numerous other ARPs to which prison officials have not responded, asserting each of the remaining claims asserted in this proceeding.  In support of this assertion, the plaintiff has provided the Court with voluminous documentation which he contends represents ARPs filed by him which have not been responded to.  He argues that his various claims should be deemed exhausted because prison officials have failed to honor the ARP system at LSP.

Upon a careful review of the voluminous documentation provided by the plaintiff, the Court finds, with one exception identified below, that there is very little support for his arguments.  Much of the more than 350 pages of documents he has submitted consists merely of letters written by him to various prison officials, letters which are not considered to be properly presented ARPs because they do not contain the statement mandated by prison rules, that "this is a request for administrative remedy", which is mandated by prison rules.  Among the other documents provided by the plaintiff are purported "emergency" ARPs which he allegedly filed, but these ARPs as well appear to be deficient because they are not addressed to the "shift supervisor" as required by prison rules, and are addressed instead to the prison warden or to other prison officials.  The Court further notes that other supposed ARPs provided by the plaintiff appear to be in proper form but appear to bear little relevance to the claims made in this proceeding and so are not here considered.  These include, <u>inter alia</u>, an ARP relative to the plaintiff not being allowed to transfer from Level 2 to Level 3 of Camp J in April, 2002, and an ARP relative to Sgt. Johnson not allowing the plaintiff to receive a letter in January, 2003.  Finally, the plaintiff has presented voluminous prison mail request records, inmate account

records and medical records, all of which appear to have little probative relevance to the claims presented herein.

Notwithstanding the foregoing, the Court has been able to cull from the plaintiff's voluminous documentation three (3) apparent ARPs which appear to be in proper form <u>and</u> which appear to be relevant to the claims asserted in the instant proceeding.  These are (1) an ARP dated December 28, 2002, relative to scam restrictions placed on the plaintiff's mail in December, 2002, (2) an ARP dated March 1, 2003, relative to multiple complaints detailed therein, and (3) an ARP dated August 28, 2004, relative to prison officials' failure to respond to some of the plaintiff's previous ARPs.  Of these, the Court finds that the first two have not been exhausted because they have never been completed through the administrative process.  Specifically, it appears from the defendants' affidavit that prison officials have no record of receipt of these two ARPs.  Accordingly, they were never processed, were never assigned ARP numbers, and have never been addressed or exhausted through the ARP system.  Whereas the plaintiff apparently believes that these ARPs should be <u>deemed</u> exhausted because prison officials have failed to respond thereto and that prison officials have thereby thwarted his attempts to obtain administrative relief, the Court does not agree.

It is accepted practice within the prison system, when there has been no timely response to an ARP, for an inmate to proceed unilaterally to the next step in the administrative process, thereby exhausting administrative remedies relative to the claim.  The plaintiff is well aware of this practice, having had a prior lawsuit dismissed for his failure so to proceed.  See <u>Kermit Parker v. N. Burl Cain, et al.</u>, No. 03-CV-0578-C-M2.  Accordingly, the Court finds in the instant case that the plaintiff has failed to show exhaustion of administrative as to the

two ARPs referenced above.  And in any event, the second such ARP, <u>i.e.</u>, that of March 1, 2003, containing multiple claims and complaints, would certainly have been rejected by prison officials as containing more than a single claim in violation of prison rules.

Finally, in contrast to the Court's conclusion that two of the above-referenced ARPs were not administratively exhausted, the Court finds that the third such ARP, <u>i.e.</u>, that filed on August 28, 2004, relative to the failure of prison officials to respond to some of the plaintiff's previous ARPs, <u>has</u> been administratively exhausted.  In this regard, the record is clear that this ARP was in fact received by prison officials and was given an ARP number (No. LSP-2004-2863).  Whereas it was ultimately "rejected" by prison officials, and whereas the defendants contend that such rejection amounts to a failure to exhaust the ARP, the Court agrees with the plaintiff that the rejection notice, by its express terms, completes and exhausts the ARP process relative to this claim.  Specifically, the ARP rejection notice states that the plaintiff "may not pursue this complaint to Step 2 since it was rejected."  Accordingly, the Court concludes that, since the plaintiff did submit this ARP in apparently proper form, and since prison officials, by their rejection of the ARP, apparently foreclosed any further review of same, the plaintiff proceeded as far as he could go in attempting to administratively exhaust this grievance.  Therefore, the Court finds that this claim has in fact been administratively exhausted for purposes of 42 U.S.C. § 1997e, and the defendants' motion for summary judgment shall be denied in this respect.

In summary, the Court finds that defendants' motion for partial summary judgment, rec.doc.no. 38, should be granted in part, dismissing all of the plaintiff's claims for failure to exhaust administrative

remedies except his claims relative to the alleged wrongful disciplinary charge of December 2, 2002 (exhausted in disciplinary appeal No. LSP-02-13519-W, which was identified in his Complaint), and his claim that prison officials have abused the ARP process by failing to respond to certain of his previous ARPs (exhausted in ARP No. LSP-2004-2863, which has been provided by him to the Court).

Turning finally to the defendants' motion to dismiss for failure to state a claim upon which relief may be granted, rec.doc.no. 36, the defendants seek dismissal of these two remaining claims on substantive grounds. In this regard, a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure may not be granted unless it appears certain that the plaintiff will be unable to prove any set of facts in support of his claim that would entitle him to relief. Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524 (5th Cir. 1994), citing Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994). See also Green v. State Bar of Texas, 27 F.3d 1083, 1086 (5th Cir. 1994) ("A dismissal will not be affirmed if the allegations support relief on any possible theory"). In reviewing a motion to dismiss under this Rule, this Court must accept all well-pleaded facts as true and must review them in the light most favorable to the plaintiff. Green, supra, at 1086.

In response to the plaintiff's allegations, the defendants assert that they are entitled to qualified immunity. Specifically, they contend that the plaintiff has failed to make sufficient allegations of conduct on their part which rises to the level of a violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. Hale v. Townley, 45 F.3d 914 (5th Cir. 1995). As recently enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider

whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights.  Second, the district court must determine whether the rights allegedly violated were clearly established.  This inquiry, the Court stated, must be undertaken in light of the specific context of the case, not as a broad, general proposition.  The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful <u>in the situation which he confronted</u>.  <u>Id.</u>  In the instant case, the defendants assert that the plaintiff's claim fails in the first instance because he has failed to allege facts in the Complaint which would support a finding that they participated in any violation of his constitutional rights.

Undertaking the <u>Saucier</u> analysis, the Court concludes that the defendants' motions are well-taken and that the plaintiff's allegations fail to overcome the assertion of qualified immunity.

Initially, with regard to the plaintiff's claim that he was wrongly charged with a false or inappropriate disciplinary violation and denied due process at a subsequent disciplinary board proceeding, the Court finds that the plaintiff fails to state a claim or cause of action.  In this regard, under § 1983, the law is clear that a mere allegation that an inmate plaintiff has been reported or punished for an act which he did not commit does not amount to a constitutional offense.  <u>Collins v. King</u>, 743 F.2d 248 (5th Cir. 1984).  Moreover, although the plaintiff asserts that he was denied due process at the resulting disciplinary board proceeding, the decision of the United States Supreme Court in <u>Sandin v. Conner</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), makes clear that inmates possess only a very narrow protected liberty interest in procedures attendant to prison disciplinary proceedings where the punishment imposed does not result in an "atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life." Id. In Sandin, the Court addressed a disciplinary sentence of a transfer to segregated confinement. Inasmuch as the Court there found that this sentence did not constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," this Court similarly finds that the plaintiff's disciplinary proceedings in the instant case, which resulted in a sentence of thirty (30) days in cell confinement and with imposition fo scam restrictions, may not be seen to invoke any protected liberty interest in which the plaintiff may claim protection. See Orellana v. Kyle, 65 F.3d 29 (5th Cir. 1995)("After Sandin, .... it is difficult to see that any ... deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional 'liberty' status"). Accordingly, the plaintiff's claim that he was unfairly charged and punished on the basis of a wrongful disciplinary charge and unfair disciplinary board hearing does not rise to the level of a constitutional violation and must be dismissed.

The plaintiff also complains that the defendants have failed to respond to some of his previous administrative grievances and have abused the ARP process. This claim is also without constitutional merit. The plaintiff has no constitutional right to have his grievances addressed, investigated, or favorably resolved. See Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005). Furthermore, there is no procedural due process right inherent in such a claim. Id. As made clear by the United States Court of Appeals for the Fifth Circuit in Geiger:

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous. "[A] prison has a liberty interest only in 'freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'" [The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any

>    alleged due process violation arising from the alleged failure to
>    investigate his grievances is indisputably meritless.

(Emphasis in original).  As previously noted, the record reflects that the plaintiff has filed many grievances and complaints, some in proper form and some not.  In addition, the record reflects that prison officials have in fact accepted and responded to many of the plaintiff's administrative grievances, suggesting that prison officials are not systematically abusing the administrative process at LSP.  Finally, as discussed above, the plaintiff has an option, when prison officials fail to timely respond to an administrative grievance, to re-assert same or to proceed unilaterally to the next step in the administrative process, thereby seeking to exhaust administrative remedies relative to his claims.  Accordingly, in the Court's view, the plaintiff's claims regarding the alleged failure of prison officials to properly address, investigate, or respond to some of his administrative grievances is without legal foundation and must be dismissed.

RECOMMENDATION

It is recommended that the plaintiff's claims against defendants Jeff Pelitz, R. Reed, Sgt. Sims, Orvin Marcatil, Dr. Tarver, Sgt. Howard and Ken Ray be dismissed for failure of the plaintiff to serve these defendants within 120 days as mandated by Rule 4(m) of the Federal Rules of Civil Procedure.  It is the further recommendation of the Magistrate Judge that the plaintiff's motion for summary judgment, rec.doc.no. 45, be denied, and that the defendants' motion for partial summary judgment rec.doc.no. 38, be granted in part, dismissing all of the plaintiff's claims for failure to exhaust administrative remedies except his claims relative to the disciplinary charge and proceedings of December 2, 2002, and his claim relative to abuse of the prison's administrative remedy procedure.  Finally, it is the recommendation of the Magistrate Judge that the defendants' motion to dismiss, rec.doc.no. 36, be granted, dismissing these two remaining claims for failure to state a claim upon which relief may be granted, and that this action be dismissed.

Signed in chambers in Baton Rouge, Louisiana, April 9, 2008.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**